(33 Misc. Rep. 724.)

In re SHEPPARD et al.

(Supreme Court, Special Term, New York County. January, 1901.)

1. CONTEMPT—SURETY ON BOND—FALSE JUSTIFICATION—PUNISHMENT.

B. in 1898 justified on a bond to discharge a mechanic's lien, and made oath that he was a freeholder and worth $1,600 over and above all liabilities. In November, 1900, on examination in supplementary proceedings, B. testified that he had owned no realty since 1896, and had not possessed any property within the last three years, other than wearing apparel. The only claim he ever had to any realty was a fictitious title to certain land, which was adjudged in ejectment proceedings in 1893 to belong to the state. At the time he justified on the bond there were several judgments for costs outstanding against him, and it appeared that he had been in the habit of going on bonds. *Held,* that B. was guilty of contempt, for making a false justification.

2. SAME—EXAMINATION OF DEFENDANT—NECESSITY.

Where a surety on a bond for the discharge of a mechanic's lien made a false justification, the fact that he was not examined as to his property at the time the bond was executed constituted no defense to a motion to punish him for contempt, since the owner had the right to rely on the surety's oath and to waive the examination.

Application by Franklin L. Sheppard and another, co-partners under the firm name of Isaac A. Sheppard & Co., for an order to punish Henry S. Bergman for contempt of court. Order granted.

Phillips & Avery, for petitioners.
William Sutphen, for defendant.

LEVENTRITT, J. Motion to punish for contempt. The defendant Bergman was one of two sureties on a bond to discharge a mechanic's lien, filed by the petitioners. Justifying as a surety on the 5th day of October, 1898, he made oath that he was a freeholder within the state, and worth $1,600 over and above all his debts and liabilities. Subsequently an action was brought to foreclose the lien. Answers were interposed by Bergman and his co-surety. Judgment, after a trial, was entered in favor of the plaintiffs on October 3, 1900, for $831.38, damages and costs. Execution was issued against the property of all the defendants, and returned unsatisfied. On the 9th day of November, 1900, Bergman was examined in supplementary proceedings. The material portion of his testimony, reduced to narrative, is as follows:

"I was in business for myself about ten years ago. Then I was speculating in real estate, notes, and stocks. This speculation business I kept on until April, 1900, when I went to clerking. * * * I receive $10 per week. * * * I own some real estate in New York, but the title is in dispute. That stands in my name. I have a deed of it on record. This is water front on South Beach, Staten Island. I don't know the name of the hotel that is on it. They've changed the name of it. I've not been near it since my trouble commenced in 1893. An ejectment suit was brought, and I was ejected, and I took the case to the court of appeals, which decided neither party showed any title. * * * This decision was Hugh McRoberts v. Henry F. Bergman. * * * Since that time I have owned no real estate. I owned more then, but all under the same title. I have not owned any real estate whatever since January 1, 1896, at least; nor any leasehold nor any interest in real estate whatever since that date. I own no bonds, stocks, and no other personal property. I have not owned any bonds or stocks within the last three years.

I have not owned any other personal property whatever at any time within the last three years, except my personal wearing apparel. Two hundred and fifty dollars will cover any and all personal and other property that I have owned at any one time during the last three years. * * * I have absolutely no property applicable to the payment of the plaintiff's judgment, or any part thereof."

Clearly, on this statement, Bergman was wholly insolvent, both at the time of his examination and of his justification. Further facts, however, appear. The title to the only real estate Bergman claimed to own was involved in the ejectment suit of McRoberts v. Bergman, 132 N. Y. 73, 30 N. E. 261, wherein his alleged title by adverse possession was defeated. This was in 1892. While he swears in his supplementary examination to the ownership of other real estate, he declares it was all held "under the same title," which turns out to be fictitious, and consists of a water front belonging to the state. It also appears that, in an action in the United States district court for the Eastern district of New York, Bergman went on a bond to effect the release of property; and, although this was after the justification herein, he yet qualified on the same real estate. There, too, an uncollectible judgment was recovered against him, and on proceedings subsequently had he was declared to be a fraudulent surety. There, as here, he was associated with a surety equally worthless. More than this, the affidavits show that at the time of the justification Bergman was indorser on several overdue promissory notes made by the debtor in whose behalf he gave the bond in this action, and as to which they subsequently suffered default judgments, likewise unpaid. It also appears that on the day Bergman justified there were several unsatisfied judgments for costs against him. There is also some proof by affidavit before me that he has in fact been in the business of going on bonds, and that his honesty of purpose in that regard has been heretofore judicially questioned. The explanations offered by him are evasive, quibbling, and quite unsatisfactory. It is apparent to me that at the time he justified as a surety he was, as he well knew, absolutely without means or property. It is settled law that a surety who by false justification induces the release of a mechanic's lien is guilty of a contempt of court. In re Hay Foundry & Iron Works, 22 App. Div. 87, 47 N. Y. Supp. 802; In re Hopper, 9 Misc. Rep. 171, 29 N. Y. Supp. 715, affirmed in 145 N. Y. 605, 40 N. E. 164; Simon v. Publishing Co., 14 Daly, 279. The fact that the surety was not examined at the time of his justification does not make his action less a contempt. It was the owner's privilege, but not his duty, to examine him. "He had a right to rely on the surety's sworn statement of his pecuniary resources." In re Hopper, supra.

I direct punishment of the surety for the contempt committed, and impose as a punishment a fine in the amount of the judgment, or imprisonment in default of its payment. Ordered accordingly.